Ex parte KUNIJIRO TOGUCHI.

(District Court W. D. Washington, N. D.   December 29, 1916.)

No. 3482.

ALIENS ☞50—IMMIGRATION—PERSON EXCLUDED.

Under Immigration Act Feb. 20, 1907, c. 1134, § 2, 34 Stat. 898 (Comp. St. 1913, § 4244), which excludes from admission into the United States aliens "who have been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements, * * * express or implied, to perform labor in this country of any kind, skilled or unskilled," or who have been assisted by others to come, unless it is affirmatively shown that they do not belong to one of the excluded classes, a Japanese alien who came to this country at the solicitation of an uncle and with money furnished by him for the purpose of entering his employ as a salesman in a store, although no contract for service was made, not being in one of the classes expressly excepted by such section, is not entitled to entry.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 108–110; Dec. Dig. ☞50.]

Application by Kunijiro Toguchi for writ of habeas corpus. Writ denied.

James Kiefer, of Seattle, Wash., for petitioner.

Clay Allen, U. S. Dist. Atty., and Albert Moodie, Asst. U. S. Dist. Atty., both of Seattle, Wash., for the United States.

NETERER, District Judge. The petitioner is an alien, whose mother resides in Japan, and whose uncle lives in Detroit, Mich., where

he is engaged in conducting a Japanese silk and dry goods and bamboo furniture business. This company has a branch store in Japan, where petitioner was employed, and for the last three years was manager of this branch store. He came to the United States, at the request of his uncle, to take a position in the Detroit store as a salesman, and, as he advances in knowledge and business methods, to substitute for one of the partners, so that they may be relieved from time to time. The uncle sent to petitioner $100 to apply on his expenses, and told him to apply to him for more money on landing, if needed. No salary was agreed upon to be paid to the petitioner. The Board found the petitioner to be 25 years of age, "intelligent, but on the whole made an unfavorable impression because of his evasiveness and crafty expression, * * * that the alien is coming to the United States in violation of the alien contract labor provision of the Immigration Act," and rejected him on that ground, and ordered his deportation to Japan. On appeal, the Secretary of Labor affirmed the finding of the Board and Commissioner.

The petitioner contends that he is not within the prohibitory clause of the Immigration Act. If the petitioner is not within the prohibitory clause of the Immigration Act, the Commissioner of Immigration has no jurisdiction to detain and deport him by erroneously concluding questions of law (Gonzales v. Williams, 192 U. S. 1, 24 Sup. Ct. 177, 48 L. Ed. 317), and such act would bring this case to the same status as denying a fair hearing (Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369). But if the alien is within the prohibition of the Immigration Act, and the hearing was fairly conducted, the decision of the Secretary of Labor is binding. Lewis v. Frick, 233 U. S. 291, 34 Sup. Ct. 488, 58 L. Ed. 967. A court has jurisdiction to determine whether the reasons given by the Commissioner, excluding aliens, come within the meaning of the Immigration Act. Gegiow v. Uhl, 239 U. S. 3, 36 Sup. Ct. 2, 60 L. Ed. 114. The fact that petitioner made an unfavorable impression upon the board can therefore be dismissed without further comment. The only question for decision is whether the alien comes within the provisions of the act supra. The portion of the act which it is claimed is violated, provides that "persons * * * who have been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements * * * express or implied, to perform labor in this country of any kind, skilled or unskilled * * *" (Comp. St. 1913, § 4244), are excluded. The violation of this act, by its express provisions, is made a crime, and, the statute being penal, its provisions must be strictly construed. United States v. Gay (C. C.) 80 Fed. 254. The act under consideration was brought forward from Act Feb. 26, 1885, c. 164, 23 Stat. 333, which act was intended to apply only to cheap, unskilled labor. Trinity Church v. United States, 143 U. S. 457, at page 458, 12 Sup. Ct. 511 (36 L. Ed. 226), in which Mr. Justice Brewer, for the court, said:

"It must be conceded that the act of the corporation is within the letter of this section for the relation of rector to his church is one of service, and implies labor on the one side with compensation on the other. Not only are the

general words 'labor' and 'service' both used, but also, as it were, to guard against any narrow interpretation and emphasize the breadth of meaning, to that is added 'of any kind.'"

Specific exemptions are made in the act. The court further said (143 U. S. 464, 12 Sup. Ct. 513, 36 L. Ed. 226):

"It appears, also, from the petitions, and in the testimony presented before the committees of Congress, that it was this cheap unskilled labor which was making the trouble, and the influx of which Congress sought to prevent."

This act was amended March 3, 1891 (26 Stat. 1084, c. 551), and in United States v. Laws, 163 U. S. 258, 16 Sup. Ct. 998, 41 L. Ed. 151, the court held that a contract with an alien to come to this country and work upon a sugar plantation in Louisiana as a chemist was not within the act of February 26, 1885, citing the Holy Trinity Church, supra. The court, at page 266 of 163 U. S., at page 1001 of 16 Sup. Ct., 41 L. Ed. 151, said:

"If by the terms of the original act the provisions thereof applied only to unskilled laborers whose presence simply tended to degrade American labor, the meaning of the act as amended by the act of 1891 becomes if possible, still plainer. Now by its very terms it is not intended to apply to any person belonging to any recognized profession. We think a chemist would be included in that class."

On March 3, 1903 (32 Stat. 1213, c. 1012), the act was further amended. The committee on immigration (H. R. No. 982, 57th Congress, First Session) stated:

"The general purpose of this bill is to bring together in one act scattered legislation heretofore enacted in regard to the immigration of aliens into the United States * * * to eliminate any part thereof which has become obsolete as a result of subsequent legislation; to amend such portions thereof as have been found, either as the result of experience in enforcing the law or by judicial decision, to be inadequate to accomplish the purpose intended, and to add such further provisions as seem to be demanded by the consensus of enlightened public opinion, besides such as are rendered necessary because of territorial acquisitions of the United States beyond its continental bounds."

The Senate Report (No. 2119, 57th Congress, First Session) stated:

"The necessity for such re-enactment is due in part to the fact that, as the result of judicial decisions, as well as of administrative experience, the efficiency of such laws to accomplish the evident purpose of their enactment has been shown to be materially lessened since the time of their enactment, and therefore a new expression of legislative will upon the subject of immigration has become desirable."

In this act was included the words "skilled and unskilled labor," and Senator Gallinger moved to strike out the words (Congressional Record, vol. 36, p. 2752), which was agreed to, and the House conferees concurred in the Senate action, the change in the act being that the words "offers," "solicitations," and "promises" were substituted for the word "contract," it being understood that the provisions of the bill should be enlarged to meet the difficulties caused by the decisions of the courts that an enforceable contract must exist in order to come within the provisions of the law. There is no suggestion in the report that it was the intention to enlarge the scope of the bill to include persons other than those to which the court

had held it applicable, except the insertion of the words "learned profession" in the last proviso.

Following the adoption of the act of 1903, the Circuit Court for the Southern District of New York, in Re Ellis, 124 Fed. 637, held that aliens imported under contract who are expert accountants were not members of any recognized learned profession, within the terms of the exemption, and were therefore not entitled to enter.

Contention is made that the intent of Congress was to restrict the prohibition to manual laborers, and not to apply it to those engaged in other employment. It will be noted that the terms "labor" or "service" was included in the act of 1885. The same term has been carried through into the act of 1907. While the Supreme Court, in Holy Trinity Church, supra, held that the intention was simply to apply the term to unskilled manual labor, and while the terms "skilled" and "unskilled" were stricken from the act as passed in 1903, the terms were included in the act of 1907. While there is nothing further in the act to indicate any intent or limitation with relation to these terms, reference to section 4 of the act of Feb. 20, 1907, 34 Stat. 900, I think, is conclusive of the question which is here presented. This section, taken in connection with the entire act, I think, clarifies the purpose and fixes the intent of the Congress without any question. Section 4 provides that:

"It shall be a misdemeanor for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any way to assist or encourage the importation or immigration of any contract laborer or contract laborers into the United States, unless such contract laborer or contract laborers are exempted under the terms of the last two provisos contained in section 2 of this act." Comp. St. 1913, § 4248.

The first proviso is that:

"Skilled labor may be imported if labor of like kind unemployed cannot be found in this country."

And the second proviso:

"That the provisions of this law applicable to contract labor shall not be held to exclude professional actors, artists, lecturers, singers, ministers of any religious denomination, professors for colleges or seminaries, persons belonging to any recognized learned profession, or persons employed strictly as personal or domestic servants." Comp. St. 1913, § 4244.

By this section all persons are excluded who do not come within the exemption. The provisions are not limited to "labor" or "service," but are limited expressly by the exemptions. The petitioner does not bring himself within the exemptions stated. The fact that no salary is agreed upon is immaterial, as under the engagement the law would imply reasonable compensation. There is nothing to indicate that the petitioner was not accorded a fair trial.

The writ will be discharged, and the petitioner remanded to the custody of the Immigration Commissioner.