UNITED STATES v. UNION BANK OF CANADA.

SAME v. ROYAL DUTCH WEST INDIA MAIL CO.

(Circuit Court of Appeals, Second Circuit. December 10, 1919.)

Nos. 60, 28.

ALIENS ☞50—EXCLUSION OF CONTRACT "LABORER" LIMITED TO MANUAL WORKERS.

The word "laborer," as used in the contract labor provisions of Immigration Acts, Act Feb. 20, 1907, §§ 2, 4, and Act Feb. 5, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼c), is limited to manual laborers, and neither a bookkeeper in a bank nor a clerk in a steamship office is within the prohibition.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Laborer.]

In Error to the District Court of the United States for the Southern District of New York.

Actions by the United States against the Union Bank of Canada and against the Royal Dutch West India Mail Company. Judgments for defendants, and the United States brings error. Affirmed.

Francis G. Caffey, U. S. Atty., of New York City (V. H. Rothwell, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Carter, Ledyard & Milburn, of New York City (Walter F. Taylor, of New York City, of counsel), for Union Bank of Canada.

Burlingham, Veeder, Masten & Fearey, of New York City (Van Vechten Veeder and William Paul Allen, both of New York City, of counsel), for Royal Dutch West India Mail Co.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge. In the first case there is a writ of error to a judgment in favor of the defendant directed by Augustus N. Hand, J., in an action brought by the United States against the Union Bank of Canada to recover a penalty of $1,000 for violation of section 4 of the Immigration Act of February 20, 1907, which reads:

"Sec. 4. That it shall be a misdemeanor for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any way to assist or encourage the importation or migration of any contract laborer or contract laborers into the United States, unless such contract laborer or contract laborers are exempted under the terms of the last two provisos contained in section 2 of this act."

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Section 2 provides for the exclusion of contract laborers, the relevant portions being:

"Sec. 2. That the following classes of aliens shall be excluded from admission into the United States: * * * Persons hereinafter called contract laborers, who have been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements, oral, written or printed, express or implied, to perform labor in this country of any kind, skilled or unskilled: * * * And provided further, that skilled labor may be imported if labor of like kind unemployed cannot be found in this country: And provided further, that the provisions of this law applicable to contract labor shall not be held to exclude professional actors, artists, lecturers, singers, ministers of any religious denomination, professors for colleges or seminaries, persons belonging to any recognized learned profession, or persons employed strictly as personal or domestic servants."

The defendant bank, a corporation of the Dominion of Canada having opened a branch in New York City, brought from its branch in Toronto one Schilling, agreeing to employ him at a salary as assistant accountant in its New York office and paying the cost of his transportation. The question is whether Schilling was a contract laborer within the meaning of the act.

The first legislation on the subject was in chapter 164, Laws 1885, section 3 of which made it an offense subject to a penalty of $1,000 to encourage in any way the importation of any alien "to perform labor or service of any kind under contract or agreement" in the United States.

Section 5 provided exceptions as follows:

"* * * Nor shall this act be so construed as to prevent any person, or persons, partnership, or corporation from engaging, under contract or agreement, skilled workmen in foreign countries to perform labor in the United States in or upon any new industry not at present established in the United States: Provided, that skilled labor for that purpose cannot be otherwise obtained; nor shall the provisions of this act apply to professional actors, artists, lecturers, or singers, nor to persons employed strictly as personal or domestic servants."

While this act was in force Rev. E. Walpole Warren was called by the Church of the Holy Trinity to the city of New York as its pastor. The government brought suit against the church for the penalty and the defendant demurred. We overruled the demurrer—36 Fed. 303—in view of the language of the act—section 3; "labor or service of any kind," and of the specific exceptions; section 5, which did not include ministers. But the Supreme Court—143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226—reversed the judgment, holding that the title of the act, "An act to prohibit the importation and migration of foreigners and aliens under contract or agreement to perform labor in the United States, its territories, and the District of Columbia," and the mischief which Congress intended to prevent, as shown by the reports of committees of Congress on the subject, demonstrated that only manual laborers were intended to be excluded.

Chapter 551, Laws 1891, § 5, amending section 5 of the act of 1885, added to the exemptions these words:

"Nor to ministers of any religious denomination nor to persons belonging to any recognized profession nor professors for colleges or seminaries."

In the case of United States v. Laws, 163 U. S. 258, 16 Sup. Ct. 998, 41 L. Ed. 151, the defendant Laws brought a chemist from Germany to Louisiana under contract to perform services there. The Circuit Court of Appeals of the Sixth Circuit certified the question whether this was within the prohibition of the act of 1885. The court answered the question in the negative, referring to the amendment of 1891, which had been subsequently passed, as making the intention of Congress as found in the case of Holy Trinity Church still plainer.

Chapter 1134, Laws 1907, entitled "An act to regulate the immigration of aliens into the United States," by section 2 prohibits the entry of aliens under contract "to perform labor in this country of any kind, skilled or unskilled"; the last two provisos being:

"And provided further, that skilled labor may be imported if labor of like kind unemployed cannot be found in this country: And provided further, that the provisions of this law applicable to contract labor shall not be held to exclude professional actors, artists, lecturers, singers, ministers of any denomination, professors for colleges or seminaries, persons belonging to any recognized learned profession, or persons employed strictly as personal or domestic servants."

Section 4 made it a misdemeanor to assist the entry of such contract laborers in any way "unless such contract laborer or laborers are exempted under the terms of the last two provisos contained in section 2 of this act."

These provisions, taken together, make a strong support for the argument that all contracts for labor are within the prohibition of the act, unless specifically exempted. This was the view taken by Judge Neterer in Ex parte Kunijiro Toguchi (D. C.) 238 Fed. 632. Nevertheless, we think the decision in Scharrenberg v. Dollar S. S. Co., 245 U. S. 122, 38 Sup. Ct. 28, 62 L. Ed. 189, holds that the act of 1907, like the prior acts on the subject, prohibits only the entry of manual laborers under contract to perform labor in the United States. In that case the defendant brought 19 Chinamen from Shanghai to San Francisco, there to ship as seamen on the American registered steamship Mackinaw. The court held, Mr. Justice Clarke writing, that these men were not under contract to perform labor in the United States, but on the high seas, which would have been enough to dispose of the case; but he also held as a second ground that a seaman was not a laborer. If so, an alien imported to perform labor as a seaman on vessels enrolled for the coasting trade or the inland waters of the United States would not be a contract laborer, within the prohibition of the act. Without inquiring whether an accountant as defined by the defendant's rules is a member of a learned profession, we affirm the judgment on the ground that Schilling was not a laborer within the meaning of the act.

In the second case there is a writ of error to a judgment directed for the defendant by the same judge in an action for a penalty under section 5 of chapter 29, Laws 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼c), which differs in no material respect as to contract laborers from the act of 1907. The defendant sent a clerk

named Mook from its office in Amsterdam to be employed in its office in New York at a salary of $1,250 per annum and paid the expenses of his transportation. There was an expectation to send him from New York to its office at Paramaribo, Dutch Guiana, after he had familiarized himself with the New York business. The grounds on which the verdict was directed were: First, that this employment at New York was a temporary one in a business of an international character; and, second, that Mook was not a contract laborer at all. Without considering the first reason, we concur in the second.

Judgment affirmed in each case.