**McCANDLESS, United States Commissioner of Immigration for Port of Philadelphia, v. UNITED STATES ex rel. ROCKER.**

Circuit Court of Appeals, Third Circuit.
January 29, 1929.

No. 3843.

Charles Denby, Jr., Asst. U. S. Atty., and George W. Coles, U. S. Atty., both of Philadelphia Pa., for appellant.

Francis Shunk Brown, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, Rocker, who was in the custody of the immigration commissioner for deportation to Germany, was discharged on a writ of habeas corpus. Thereupon the commissioner took this appeal.

The record shows that Rocker came to the United States in April, 1923. In July he filed his petition to be naturalized. He subsequently bought a home. Some 18 months after his arrival he was arrested for alleged violation of the immigration laws, on the charge that he had been promised employment by the Schutte & Koerting Company. On hearing the proofs, this charge was abandoned, but the complaint was amended by charging that, in violation of the Immigration Act of February 5, 1917, § 3 (8 USCA § 136(k) which provides "that the following classes of aliens shall be excluded from admission into the United States: * * * (k) Persons whose tickets or passage is paid for * * * by any corporation, association, society, municipality, or foreign government, either directly or indirectly"—he had unlawfully been brought into the country.

In considering this appeal we, of course, recognize our duty under the law to accept findings of fact by the immigration authorities as final and conclusive, and that we have no power to review and disturb them, but we are equally clear that, as was said in an appeal from the decision of the Federal Trade Commission, so here, "it is quite clear that it is not only the province, but the duty, of the Circuit Court of Appeals, and indeed the expressed purpose of Congress, that such reviewing court should itself examine the pleadings, the entire testimony and proceedings, and upon such inclusive examination determine whether the facts found by the commission and the proofs on which the commission made no findings, and which the court, in the absence of such finding, itself finds and determines, legally established," etc.

Accepting, then, the finding of the immigration authorities that the books of the

Schutte & Koerting Company show that Rocker's passage was paid by that company, does this fact warrant Rocker's deportation? The commissioner held it did. Assuming that this entry, standing alone and unexplained, justified this conclusion, we are of opinion that, taking the case as a whole and giving due regard to the proofs and facts, which manifestly the commissioner did not consider, and on which he made no finding, the court below committed no error in discharging Rocker from custody. As we have seen, the original allegation was that the named company had violated the law by contracting to employ Rocker; but the proofs failed to show any agreement on the part of that company to employ him, so that the case stands, not only as failing to show any such agreement to import contract labor in violation of law, but an abandonment of that contention after the charge had been made. The proofs also show that, when the money was furnished by the company to buy his ticket, it was done at the request of Rocker's friend, Meysenburg, on his own credit, and without any then understanding or agreement that the advance was to be paid by Rocker, and without, as we have said, any understanding or agreement that Rocker was to be employed by the Schutte & Koerting Company.

From the proofs it further appears that William Meysenburg was a superintendent for many years at the Krupp Works in Germany. Economic conditions in that country were so adverse that he emigrated to the United States in October, 1922, and eventually became superintendent of the Schutte & Koerting Company, which firm was engaged in mechanical work of precision and accurate character. Rocker had been Meysenburg's assistant superintendent at the Krupp Works in Germany for many years. His training had been in a German industrial school, and the proof is he had received "a technical training as a machinist and machine builder." His position in the Krupp organization was that of "workmaster or assistant to the superintendent." He "had twenty men under [his] supervision in technical bureaus and also in some parts [he] had from five to six hundred men under [his] supervision." It is therefore clear that Rocker did not fall within the class excluded by the contract labor legislation, which, as stated by Judge Thompson, of the Eastern District of Pennsylvania in Ex parte Aird, (D. C.) 276 F. 957, citing other cases, was "to arrest the bringing of an ignorant, servile class of foreign laborers into the United

States, under contract to work at a low rate of wages, and thus reduce other laborers engaged in like occupation to the level of the assisted immigrant." From this and other cases (Ex parte Gouthro [D. C.] 296 F. 506; United States v. Union Bank of Canada [C. C. A.] 262 F. 91, 8 A. L. R. 1438; Tatsukichi Kuwabara v. U. S. [C. C.A.] 260 F. 105) it is clear that, if Rocker did in this country the technically skilled work he did for many years in Germany, he was not of the class contemplated by this legislation.

Such being his status, Rocker, when Meysenburg was leaving Germany, told him he, too, wanted to come to this country, and, being without funds, he then and subsequently by letter asked Meysenburg to help him come after he was settled. Meysenburg found employment with the Schutte & Koerting Company, of which one Fischer was president. From the names of the company, officers and men, it requires no reading between the lines to see that there was a racial sympathy and good will of the Germans here to help those of their people who were suffering from economic post-war conditions and who wished to come to this country. Accordingly Meysenburg, vouching for the worth and character of Rocker, asked Mr. Fischer, the president of his company, to have his company advance, on Meysenburg's assurance, the money to buy Rocker a steamship ticket. This was done, and, as we have said, without any agreement to employ Rocker, and without any promise or undertaking on his part to repay the company, which dealt with and trusted Meysenburg and had no dealings whatever with Rocker. Later on, Rocker arrived and asked for any kind of work so, as he says, to familiarize himself with the English language. Work for him with the company was then, and not before, secured by Meysenburg, who naturally wanted the money repaid which that company had at his request advanced. After familiarizing himself with the work, Rocker was later made a superintendent of production, where his work was to calculate and inspect production. From his pay he regularly repaid Meysenburg, who in turn repaid the company. Later on the refund payments as made were made direct to the company, but it is clear the company never looked to Rocker, but to Meysenburg, for payment, as is shown by the fact that, although Rocker was in its employ, the company paid him his wages without any deduction.

Finding no error in the decree of the court below, dismissing Rocker from custody, its order is affirmed.