### Ex parte GUEST (two cases).

(District Court, D. Rhode Island. March 28, 1923.)

#### Nos. 3282, 3283.

1. **Habeas corpus ⬤═85(1)—Evidence held to show aliens were not allowed to inspect evidence on which warrants were issued.**

Evidence in habeas corpus proceedings to procure the discharge of petitioners from warrants for deportation *held* to show that petitioners and their counsel were not allowed to inspect the evidence on which the warrants of arrest were issued, in accordance with immigration rule 22, subd. 5b; the document contained in the files submitted to counsel not being an application for warrant of arrest or conforming to the requirements of rule 22, subd. 3.

2. **Aliens ⬤═54—Invalidity of warrant of arrest does not invalidate warrant for deportation.**

The invalidity of a warrant for arrest of aliens on the ground they were unlawfully within the country does not affect the validity of an order of deportation made after a hearing.

3. **Aliens ⬤═53—Deportation not authorized for false statements, not under oath, by aliens who were not within excluded classes.**

Under Immigration Act Feb. 5, 1917, § 16 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼i), empowering inspectors to administer oaths touching the right of any alien to enter, and making false swearing by a person to whom such oath has been administered perjury, when taken in connection with Penal Code, § 125 (Comp. St. § 10295), concerning false swearing, misstatements made by aliens, who were

---

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

not of the excluded classes and who were not shown to have been sworn, do not subject them to deportation under section 19 of that act (section 4289¼jj), as aliens who have entered in violation. of the act.

**4. Aliens ⬤⟿50—Entry to obtain employment where strike is on does not make alien contract laborer.**

An alien, who entered this country to obtain employment at his trade at a place where he knew a strike was then on, but whose testimony that he had no contract or understanding for such employment before he entered was supported by other witnesses and was not contradicted by other evidence, did not enter in violation of the Contract Labor Law.

**5. Aliens ⬤⟿53—Giving fictitious name does not justify deportation.**

A false statement by a married alien, in giving her maiden name, instead of her married name, and in giving a wrong destination, not made under oath, does not alone justify deportation on the ground of entry in violation of law.

**6. Aliens ⬤⟿54—Finding woman was apt to become public charge held unsupported.**

Where the proof showed that an alien woman was in possession of $600 in money and was living with· her husband, who was working at good wages, a statement in an order for her deportation that she was likely to become a public charge was wholly unjustified.

**7. Aliens ⬤⟿54—Order deporting to England alien entering from Canada held erroneous.**

Where aliens born in England had first removed to Canada, and from there entered the United States, and there was no evidence that they were induced. to come from England as contract laborers, there was no authority for an order deporting them to England.

**8. Aliens ⬤⟿53—Detention for deportation to unauthorized place is illegal.**

A detention of an alien for deportation to an unauthorized place is illegal.

**9. Aliens ⬤⟿54—Proof held not to warrant deportation for entry without inspection.**

Proof that aliens misstated to the inspector, when they were not under oath, their occupation, destination, and true names, under the apprehension that, if they stated those facts truly, they would be excluded, though in fact˃they were not members of the excluded classes, and ·that the inspector was satisfied with those statements and made no further inspection, does not authorize a deportation of the aliens, under Immigration Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), on the ground that they had entered without inspection.

**10. Aliens ⬤⟿54—Enumeration of grounds of deportation prohibits. deportation on other grounds.**

The enumeration of the grounds for deportation of an alien in Immigration Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), prohibits deportation in other cases not covered by statute.

Habeas Corpus. Separate petitions by Jonathan Guest and by Bridget Teresa Guest for writs of habeas corpus to procure their discharge from custody under warrants for their deportation. Order directed to be entered in the future discharging petitioners, unless in the meantime valid orders of deportation are made after fair hearing by the authorities or a request for further hearing in court is made.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

Edward G. Fletcher and Clifton A. Brownell (of Greenough, Easton & Cross), both of Providence, R. I., and Albert S. Bard (of Bard & Calkins), of New York City, for petitioners.

Harold A. Andrews, Asst. U. S. Atty., of Providence, R. I., for the United States.

BROWN, District Judge. By the returns of Francis J. McGovern, United States Immigration Inspector, to the writs of habeas corpus, it appears that the petitioner Jonathan Guest, a British subject, born in England, and his wife, Bridget Teresa Guest, are held in custody by virtue of a warrant for their deportation, dated September 23, 1922, signed by Robe Carl White, Second Assistant Secretary of Labor. The cause for deportation stated in the warrant is that they "have been found in the United States in violation of the Immigration Act of February 5, 1917," to wit:

"That the woman was a person likely to become a public charge at the time of her entry, and that both aliens entered by means of false and misleading statements, thereby entering without inspection."

Though both the petitioners entered from Canada, the order is that they be returned "to England, the country whence they came."

Appended to the petition is the report of the hearings conducted by Inspector William M. Clark, at Providence, R. I.

The petitioners contend that at the hearing before said William M. Clark, neither petitioners nor their counsel were given an opportunity to inspect the evidence upon which the warrants of arrest were issued, that the warrant of deportation is not based upon any evidence whatsoever, and that the petitioners have been denied a fair hearing. It is further urged that the ground for deportation set forth, namely, "that both aliens entered by means of false and misleading statements, thereby entering without inspection," is not a ground for deportation under the law.

It is also urged that the warrant for deportation of the petitioners to England is illegal and void, by reason of the fact that Canada, and not England, is the country in which the petitioners were domiciled and whence they came.

The warrant of arrest issued August 1, 1922, charges that Jonathan Guest has been found in the United States in violation of the Immigration Act of February 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), for the following, among other reasons:

"That he entered by means of false and misleading statements, thereby entering without inspection, and that he was a contract laborer at the time of entry, having been induced, assisted, encouraged, or solicited to migrate to this country by an offer or promise of employment, or in consequence of an agreement, oral, written, or printed, express or implied, to perform labor of any kind, skilled or unskilled, in the United States."

The reasons assigned in the warrant for arrest of Bridget Teresa Guest are:

"That she entered without inspection, and that she was a person likely to become a public charge at the time of her entry."

Objection is made to both warrants of arrest for noncompliance with immigration rule 22, subd. 3, and especially the provision that the application for the warrants should be accompanied by the affidavit of the person giving the information.

[1] At the hearing before me oral testimony of the petitioners and their counsel was presented bearing upon the question whether or not the petitioners were allowed to inspect the warrants of arrest and all the evidence on which they were issued, in accordance with rule 22, subd. 5b. The petitioners and their counsel all state that no documents except the warrants of arrest were offered for inspection.

Inspector William M. Clark testified that the papers handed to Mr. Brownell, counsel for the petitioners, included a report of an investigation. He stated that a file was handed to Mr. Brownell, containing the original warrants of arrest, and carbon copies of them, and that between them was a paper, which was not pointed out specifically to Mr. Brownell, and that—

"I afterward took that file apart and handed to Mr. Brownell copies of both the original warrants of arrest, which he could keep for his file."

Upon the evidence I find that the petitioners were not allowed to inspect any evidence upon which the warrants were issued. The document which the inspector says was contained in the files is as follows:

"16          U. S. Department of Labor, Immigration Service.
"File No. ———.

          "Report of Investigation in the case of GUEST, JOHN.

"Investigation conducted at the request of ——— by Inspector W. M. Clark, at Providence, R. I., date 6/8/22.

"Minutes taken and transcribed by Clark.

"Mr. James McKechnie, of the Machine Printers' Union, whom you met at this office recently, when he handed you some correspondence, in re alleged importation of contract laborers, called at this office this morning and told me the following:

"John Guest, age about 37, accompanied by his wife, name unknown, is alleged to have landed at Quebec or Montreal, on the steamship Canada that left Liverpool on April 22, 1922, and after about two or three weeks in Canada entered the United States at some port unknown, but supposed to be at Rouses Point, Lewiston, Black Rock, or Buffalo. From information at hand this man talked about Toronto, Buffalo, and Albany, and stated that on his way to Providence he passed through Springfield and Worcester, Mass. This man I am informed has been a machine printer all his life, with the exception of a short time that he conducted a rooming house at Blackpool, England, but that on entering the United States he gave his business as a dry goods merchant. It is alleged that he has stated that on entering the United States he was pulled out of his Pullman berth, and that his wife was detained for about two hours, which latter does not seem probable, as he would no doubt have been detained also, if his wife was.

"Upon arrival here this man immediately secured work as a machine printer for the  U. S. Finishing Co., Pawtucket, R. I., and he and his wife are boarding at 152 Summit St., that city. This plant is one of the ones on strike at the present time.

"It is respectfully requested that our Montreal office be requested to furnish verification of landing in this case, if possible, together with any possible board record, as it is felt that this man was induced to come to this country in violation of the contract labor law. The investigation of the union officials will be continued.

                              "W. M. Clark, Inspector in Charge."

This report of investigation can hardly be termed an application for a warrant of arrest, or to conform to the requirements of the regulation. Rule 22, § 3.

It is the contention of the petitioners that the original warrants of arrest were invalid for noncompliance with the rules of the department, since these rules have the effect of law, and that if the warrants of arrest were illegal all further proceedings in the matter are null and void.

[2] No authority has been presented to sustain the contention that the validity of an order of deportation made after a hearing is dependent upon the validity of the warrant of arrest, or upon the conformity with regulations concerning the issuance of warrants. The fact that the warrants of arrest command the taking of the aliens into custody, and that the order of deportation does not, in terms, command an arrest, but commands the officer to return the aliens to the country whence they came, affords some support for regarding the proceeding as continuous from the time of the original arrest until the time of deportation. I doubt, however, how far a warrant of arrest, regular upon its face, may be invalidated by an inquiry into the question whether or not there had been strict compliance with the rules regulating application for its issuance. A similar question was considered by Judge Anderson in Colyer v. Skeffington (D. C.) 265 Fed. 17, 51. I am not prepared to hold that the objections to the validity of the warrants of arrest are sufficient to authorize the discharge of the petitioners from the warrant for deportation, or to relieve the court from the duty of considering the sufficiency of the grounds upon which deportation was ordered. As it was not found upon the hearing that either of the petitioners was within the class of contract laborers, and liable to exclusion as a member of that class, it is necessary to consider the contention that the grounds set forth in the warrant for deportation are not statutory grounds therefor.

[3] Proceedings for the deportation of aliens who have already entered the United States, and an enumeration of the classes of persons who, having entered, are subject to deportation, are contained in section 19 of the Act of February 5, 1917 (section 4289¼jj). Pertinent portions of that section are:

"Any alien who shall have entered or who shall be found in the United States in violation of this act, * * * or who enters without inspection."

Section 16 (section 4289¼i) provides for physical and mental examination, and also for inspection which includes an inquiry. It is provided:

"Said inspectors shall have power to administer oaths and to take and consider evidence touching the right of any alien to enter, re-enter, pass through, or reside in the United States, and, where such action may be necessary, to make a written record of such evidence; and any person to whom such an oath has been administered, under the provisions of this act, who shall knowingly or willfully give false evidence or swear to any false statement in any way affecting or in relation to the right of any alien to admission, or readmission to, or to pass through, or to reside in the United States shall be deemed guilty of perjury and be punished as provided by section one hundred and twenty-five of the act approved

March fourth, nineteen hundred and nine, entitled 'An act to codify, revise, and amend the penal laws of the United States.' All aliens coming to the United States shall be required to state under oath the purposes for which they come, the length of time they intend to remain in the United States, whether or not they intend to abide in the United States permanently, and become citizens thereof, and such other items of information regarding .themselves as will aid the immigration officials in determining whether they belong to any of the excluded classes enumerated in section three hereof."

Taken in connection with section 125 of the Penal Code (Comp. St. § 10295) concerning false swearing, this seems to define what is an entry in violation of law by reason of false statements. It expressly includes persons who make false statements under oath, and there is no provision concerning false statements not under oath.

In the present case it does not appear from any evidence on the record that either of these aliens, in making the statements which it ,is alleged are false, was sworn. A distinction seems to be made in the statute between evidence touching the right of the alien to enter or to reside, and such other items of information regarding themselves as will aid the immigration officials in determining whether they belong to any of the excluded classes enumerated in section 3 of the Immigration Act. Do the words "who enters without inspection" cover persons who make misstatements, or false and misleading statements, not under oath?

In Ex parte Lalime (D. C.) 244 Fed. 279, 282, a decision in this circuit, the learned judge said:

' "No decision has been called to my attention holding that a misstatement to an immigration inspector, made by a person not within the excluded classes, is ground for deportation after the alien has been admitted into this country. There is no express provision to that effect in the statute, and I do not think the statute can properly be extended by implication to confer such extremely wide powers."

There being no finding that either one of these petitioners was in fact a contract laborer, and as there is an express denial, supported by the testimony of the petitioners and a corroborating witness, that the petitioner Jonathan Guest came into the United States with a previous engagement as a contract laborer, we have the question whether answers made by him to evade an inquiry into his status as a contract laborer are sufficient grounds for his deportation on the ground that he is unlawfully in this country, not by reason of the fact that he is a member of an excluded class, but that, he evaded inquiry on the subject. The principal false statement which is attributed to Jonathan Guest is that he told the inspector he was a merchant, when as matter of fact he had been for many years a calico printer. Jonathan Guest testified before me that he had been both a merchant and a calico printer, and admits that he did not tell the inspector he had been a calico printer.

[4] That the petitioner Jonathan Guest was by trade a calico printer, and that his destination was Pawtucket, R. I., a place where a .strike was on in that line of industry, would not have been a sufficient cause for exclusion, and, if the fact that he was a calico printer was suppressed, this was not a suppression of a cause of exclusion, but

merely of a fact which might have led to an inquiry whether he had been illegally induced to come to this country as a contract laborer.

From the testimony of husband and wife it is apparent that they were apprehensive of refusal of entry into the country if it were known that the husband was a calico printer and was proceeding to a place where a strike was pending. From the report of Inspector Clark, which preceded the issue of the warrant of arrest, it appears that "it is felt that this man was induced to come to this country in violation of the Contract Labor Law," because he was a machine printer who, on entering the United States, gave his business as a dry goods merchant, and who got employment in the United States Finishing Company, of Pawtucket, R. I., a plant where a strike was on at the date of the inspector's report. But these facts are equally consistent with the desire of the petitioner Jonathan Guest to enter the country and to secure profitable employment by reason of opportunities for such employment arising from the existence of a strike. As a matter of law, evidence that an alien entered this country with the intention of going to a place where a strike is pending is not sufficient to prove him a contract laborer. That he intended to become a strike breaker would not justify his exclusion from the country.

It is suggested that Jonathan Guest also made false statements concerning the length of his residence in Canada; but the evidence is definite that he was required to pay a head tax, and did pay it, before entry, which seems sufficient evidence that he did not mislead the immigration inspectors into thinking him a person who was not required to pay a head tax.

It is also suggested that there was misinformation whereby the requirement of a viséed passport was obviated; but, as the petitioners were not hostile aliens it does not appear that there was any requirement in relation to viséed passports which was applicable to them.

So far as Jonathan Guest is concerned, the question seems to reduce itself to this: Was there ground for holding that he is an alien who entered into the United States in violation of the Act of February 5, 1917? The only evidence is in the fact that he represented himself to be a merchant, which, though not wholly untrue, was a suppression of the fact that he had also been a machine printer. It does not appear that he is subject to the penal provisions of section 16, which are confined to persons to whom an oath has been administered. That persons who have not made a false oath, but who have given misinformation upon inspection, are to be classified as persons who entered without inspection, is hardly a satisfactory interpretation of the law as a whole.

The restriction of the penal provisions to persons who swear to a false statement is significant. Where full inquiry was averted by a person who fraudulently intended to conceal a cause for exclusion, through untruthful statements, it might perhaps be said that he entered "without inspection." If, however, there was no attempt to conceal a fact which would be a cause of exclusion, but merely to conceal a fact which was not a lawful cause of exclusion, but which might, in the opinion of the applicant, be likely to cause him to be

excluded, the case assumes a different aspect. A man may evade inquiries as to his status without becoming liable to punishment under section 16 of the act, and without coming within the provisions of section 125 of the Penal Code.

If full inquiry of the immigration inspectors was evaded, yet it does not appear that any detriment followed from the admission of the applicant into the country, if, in fact, he was not a contract laborer. Upon this question there now seems to have been full inquiry, and an absence of any evidence which is inconsistent with the right of the applicant to remain in the country.

[5] In the case of the wife the false statement was in giving her maiden name, instead of her married name, and in giving a wrong destination. There is no evidence that she herself was a contract laborer, and her only purpose in giving her maiden name seems to have been her apprehension that she might be excluded if it were known that her husband had secured work at a place where there were labor difficulties, or where a strike was pending. It would be a strained construction of the statute to say that any person found within this country might be deported within five years after arrival by showing merely that he had given a wrong name or a wrong occupation when he entered the country. In the course of naturalization proceedings many cases have been brought to my attention where, for personal reasons, the applicants had shipped to this country and had entered this country under fictitious names. Unless this fact is coupled with other evidence tending to show a concealment of some material matter, it hardly can be held a cause sufficient to justify deportation.

[6] The statement in the order of deportation that the wife was likely to become a public charge seems to be wholly unjustified by any evidence that was before the examiner. It appears that she was in possession of some $600 in money, and that her husband was working at good wages. I am satisfied that there was no ground for holding her likely to become a public charge, and that the finding indicates an unfair attitude. If this woman is to be deported, it certainly should not be under the guise of a decision that she is likely to become a public charge. Gegiow v. Uhl, 239 U. S. 3, 10, 36 Sup. Ct. 2, 60 L. Ed. 114.

[7] In the absence of evidence sufficient to justify deportation on the ground that Jonathan Guest was a contract laborer, induced to come from England, I am unable to understand why it should be found necessary or justifiable to make an order deporting him to England. According to the evidence he left England with his wife with an intention to settle in Canada and to obtain occupation there, and he remained there from February 26, 1922, when he landed, until May 19, when he entered the United States. He had previously been in Canada, and had there taken out a Canadian passport, which was still unexpired. While Great Britain was the place of his birth, there is evidence tending to show that Canada was the place of domicile at the time of the entry.

[8] It has been held that a detention for deportation to an unauthorized place is illegal. U. S. v. Sisson (D. C.) 220 Fed. 538; U. S. ex rel. Moore v. Sisson, 206 Fed. 450, 124 C. C. A. 356; Ex parte Gytl (D. C.) 210 Fed. 918.

If it were found that these aliens are properly subject to deportation, it would be necessary to consider in greater detail the facts concerning their residence in Canada, the question of domicile, and the contention as to the place of deportation. But the case, in my opinion, turns upon the question whether the petitioners are subject to deportation under the express provisions of the statute.

[9] Upon the question whether or not the petitioners entered without inspection, it appears that they did not enter without such inspection as the immigration officers saw fit to give them. It does not appear that anything was concealed which, if known to the immigration inspectors, would have been a cause of exclusion. If, in making the inquiries, the immigration officers did not follow the provisions of the statute requiring statements under oath; if they were content with informal inquiries, not in conformity with the express provisions of the statute—we are not warranted in finding that the petitioners entered in violation of section 16 of the act.

The substance of it seems to be that they passed such inspection as the immigration officials saw fit to give them, and that, even if they made inaccurate statements, they did not do so with the intent to gain admission which the statute denied them as members of an excluded class of objectionable aliens.

[10] In Gegiow v. Uhl, 239 U. S. 3, 9, 36 Sup. Ct. 2, 3 (60 L. Ed. 114), it was said:

"The courts are not forbidden by the statute to consider whether the reasons, when they are given, agree with the requirements of the act. The statute by enumerating the conditions upon which the allowance to land may be denied prohibits the denial in other cases."

It seems to follow that the statute concerning the expulsion of aliens found in the country (section 19 of the act) must be subject to the same rule; the enumeration of the grounds of deportation prohibits deportation in other cases. A member of an excluded class, or a violator of the penal provisions of the act, is subject to exclusion under the clause "any alien who shall have entered or who shall be found in the United States in violation of this act," without resort to the phrase "who enters without inspection."

I am of the opinion that the statute cannot properly be extended by implication to cover the case of these petitioners. This accords with the views of the District Court for the District of Massachusetts in Ex parte Lalime (D. C.) 244 Fed. 279, 282.

An order will be entered on May 1, 1923, discharging the petitioners, unless it be made to appear that there are, at that time, outstanding against them valid orders of deportation made after fair hearing by the immigration authorities, or that there is on file in these proceedings a request for further hearing in this court on the right of the petitioners to remain in this country.