**GOON MEE HEUNG, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

No. 6828.

United States Court of Appeals
First Circuit.

Heard March 9, 1967.

Decided June 29, 1967.

Joseph F. O'Neil, Boston, Mass., for petitioner.

Albert F. Cullen, Jr., Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., was on brief, for respondent.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Petitioner, Goon Mee Heung, was ordered by the Immigration and Naturalization Service on April 18, 1966, to report for deportation to Hong Kong on May 3, 1966. This order was based on a prior deportation order entered against her on April 29, 1964, for having entered the United States without valid entry documents. 8 U.S.C. §§ 1182(a) (20), 1251(a) (1). The Service determined that she entered by the fraudulent use of a passport, and that in point of fact she had no legal visa. No appeal was taken. Immediately prior to the day set for her deportation petitioner filed a motion under 8 U.S.C. § 1255 to reopen her case so that she could apply for an adjustment of her status to that of an alien lawfully admitted for permanent residence. This statute, by its terms, is applicable only to aliens who were "inspected" at the time of entry, which requirement petitioner alleged she met, and necessitates a showing that the alien is " * * * eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and * * * an immigrant visa is immediately available to him * * *," as to which the motion was entirely silent. The Service and the Board of Immigration Appeals denied petitioner's motion on the ground that she had entered the country without having been "inspected."

There is, unfortunately, no definition of the term "inspection" anywhere in the act. In addition to section 1255(a), section 1251(a) (2) uses the term in providing that anyone who enters the United States without inspection shall be subject to deportation. Some cases under this section and its predecessors have held that false statements to immigration inspectors have the effect of preventing meaningful inspection and, accordingly, render an alien deportable. E. g., United States ex rel. Volpe v. Smith, 7 Cir., 1933, 62 F.2d 808, aff'd on other grounds, 289

U.S. 422, 53 S.Ct. 665. 77 L.Ed. 1298. Others have held to the contrary. E. g., Ex parte Gouthro, E.D. Mich., 1924, 296 F. 506, aff'd sub nom. United States v. Southro, 6 Cir., 1925, 8 F.2d 1023.[1] We find no case, however, holding that the acceptance of a false claim to United States citizenship, enabling an alien to enter the country without registering as an alien, constitutes inspection, or is equivalent to having been inspected. See, e. g., Ben Huie v. INS, 9 Cir., 1965, 349 F.2d 1014.

Whatever the effect other misrepresentations may arguably have on an alien's being legally considered to have been inspected upon entering the country, we do not now consider; we are here concerned solely with an entry under a fraudulent claim of citizenship. Aliens who enter as citizens, rather than as aliens, are treated substantially differently by immigration authorities. The examination to which citizens are subjected is likely to be considerably more perfunctory than that accorded aliens. Gordon & Rosenfield, Immigration Law and Procedure § 316d (1966). Also, aliens are required to fill out alien registration forms, copies of which are retained by the immigration authorities. 8 C.F.R. §§ 235.4, 264.1; 8 U.S.C. §§ 1201 (b), 1301–1306. Fingerprinting is required for most aliens. 8 U.S.C. §§ 1201 (b), 1301–1302. The net effect, therefore, of a person's entering the country as an admitted alien is that the immigration authorities, in addition to making a closer examination of his right to enter in the first place, require and obtain information and a variety of records that enable them to keep track of the alien after his entry. Since none of these requirements is applicable to citizens, an alien who enters by claiming to be a citizen has effectively put himself in a quite different position from other admitted aliens, one more comparable to that of a person who slips over the border and who has, therefore, clearly not been inspected.

Contrary to the suggestion in Judge Coffin's dissent, we need not, and do not, decide that whenever an inspection is not pursued because of a misrepresentation there has been no inspection. What we do hold is that there must at least be a submission or presentation for the inspectation required by the statute, and that for the substantive reasons heretofore given section 1251 "(a) Any alien * * * who * * * (2) entered the United States without inspection * * *" required an inspection *as an alien*. This inspection was never had in any degree. A man who, when asked about his health, falsely denies any past illnesses, as a result of which no further examination is made, has, in a sense, had a health inspection. A man who successfully claims to be a citizen has not been inspected as an alien at all. We hold, accordingly, that where there was a false claim of citizenship, made and accepted, there has been no inspection under this section.

Even if we are mistaken in this regard, the legislative history shows that the term "inspection" in section 1255(a), under which petitioner seeks to come, is even more strict. This section as originally enacted in 1952 was restricted to certain aliens lawfully in this country, on a less than permanent basis, for whom it furnished a procedure under which they might be transferred to that broader status.[2] As the result of an extensive

---

[1] Some of the early cases casting doubt on the question whether misrepresentations prevented an alien from being inspected, in addition to not involving misrepresentation of citizenship, relied on the absence in the statute of any provision making fraud or misrepresentation in entering the United States grounds for deportation. E. g., Ex parte Gouthro, supra; Ex parte Guest, D.R.I., 1923, 287

F. 884. Needless to say, this lacuna in the immigration laws no longer exists, 8 U.S.C. §§ 1182(a) (19), 1251(a) (1), and, accordingly, there is no longer a need for construing the statute with such an absence in mind.

[2] "(a) The status of an alien who was lawfully admitted to the United States as a bona fide nonimmigrant and who is continuing to maintain that status may be

1960 amendment, Pub.L. 86–648, the presently pertinent part of section (a) reads as follows.

"(a) The status of an alien, other than an alien crewman, who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence * * *."

We find in the legislative history no purpose to broaden the statute to apply to aliens who are *un*lawfully in the country. On the contrary, the Senate and House Report which accompanied the joint resolution stated in material part,

"It is intended that only those aliens who enter the United States in good faith and without any intention of circumventing quota restrictions of the Immigration and Nationality Act, or any other law relating to immigration shall be entitled to the benefits of section 245(a) [8 U.S.C. § 1255 (a)], as amended." 1960 U.S.Code Cong. and Adm.News, pp. 3124, 3147.

We confess to some criticism of the draftsmanship of the amendment, but this in itself does not lead us to the conclusion that Congress intended a major change in the scope of the statute. Cf. Compagnie Nationale Air France v. Costano, 1 Cir., 1966, 358 F.2d 203, 207.

Actually, there were two changes. The first word "lawfully" first disappeared in a 1958 amendment. The concept, however, was not intended to be changed. In the Senate Report occurs the sentence, "This legislation will not benefit the alien who has entered the United States in violation of the law." Senate Report 2133, 1958 U.S.Code Cong. and Adm.News, pp. 3698, 3699. The House Report, also, refers to lawful admission. Id., at p. 3701.

The 1958 amendment read as follows.

"(a) The status of an alien who was admitted to the United States as a bona fide nonimmigrant may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence * * *."

Because of the joint legislative reports and the absence of any mention of the omission of the word "lawfully" from the initial clause we must assume that the drafters thought it remained implicit, possibly on the basis of the words "bona fide," or perhaps simply thinking that "lawfully admitted for permanent residence" was in obvious juxtaposition with lawfully admitted for some lesser purpose. If the former, the implication became even more attenuated with the 1960 amendment, but this would not be the first time that such variations between language and disclosed intent have happened. Even unambiguous language "does not end inquiry into Congress' purpose * * *." National Woodwork Manufacturers Ass'n v. NLRB, 4/17/67, 386 U.S. 612, 87 S.Ct. 1250, 1255, 18 L. Ed.2d 357; United States v. Wise, 1962, 370 U.S. 405, 412–414, 82 S.Ct. 1354, 8 L.Ed.2d 590; Carolene Products Co. v. United States, 1944, 323 U.S. 18, 65 S.Ct. 1, 89 L.Ed. 15. In the light of these clear expressions of legislative intent we must agree with the view of the Second Circuit that this section remains as special assistance only for aliens who are properly here. See Tibke v. INS, 2 Cir., 1964, 335 F.2d 42.

Affirmed.

COFFIN, Circuit Judge (dissenting).

While conceding that the court's opinion is both reasonable and supported by authority, I do not think that it is compelled by either the language or the scheme of the statutes. It is, I think, not at all difficult to seize upon a narrower

adjusted by the Attorney General in his discretion (under such regulations as he may prescribe to insure the application of his paragraph solely to the cases of aliens who entered the United States in good faith as nonimmigrants) to that of an alien lawfully admitted for permanent residence * * *."

meaning of "inspection" without doing violence to either law or policy—in accordance with the rule that deportation statutes should be construed strictly in favor of the alien. Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433 (1948). See also Immigration & Naturalization Service v. Errico, 385 U.S. 214, 225, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966).

A legitimate narrower meaning, in my view, is that an alien has been "inspected" when he has presented himself to an inspector at a proper place and time, whether or not meaningful inquiry then ensues. To make oneself available to an inspector for whatever questions he may wish to ask, even if one makes false statements, is to be inspected, just as "[i]f a witness in court makes false statements on cross-examination, and thereby induces cross-examining counsel to forego further questioning, such a witness cannot be said to have testified 'without cross-examination'." Ex parte Gouthro, 296 F. 506, 511–512 (E.D.Mich. 1924), aff'd sub nom. United States v. Southro, 8 F.2d 1023 (6th Cir. 1925). Just as false swearing is a separate crime subject to separate sanction, so today—and since 1952—is false representation in securing entry, 8 U.S.C. § 1182(a) (19). While the court reasons that the addition of this ground for deportation makes unnecessary any construction giving significance to the absence of such a ground, I draw the conclusion that one who enters through false representation, being now explicitly deportable under section 1182(a) (19), need not also be implicitly barred from discretionary adjustment of status under section 1255(a) (by equating false representation of citizenship with lack of in-

spection) or doubly deportable by broadly defining "inspection" in section 1251 (a) (2).[3]

A narrower meaning of "inspection" seems consistent with the statutory scheme, both past and present. At the time of *Gouthro*, the predecessor of section 1251(a) (2) read:

"[A]ny alien who shall have entered the United States by water at any time or place other than as designated by immigration officials, or by land at any place other than one designated as a port of entry for aliens by the Commissioner General of Immigration, or at any time not designated by immigration officials, or who enters without inspection, shall, upon the warrant of the Secretary of Labor, be taken into custody and deported." Immigration Act of 1917, § 19, 39 Stat. 889.

This series of thoughts seems to be directed at those who seek to frustrate the immigration laws by surreptitious avoidance of all scutiny. The phrases used contemplate the choice of time and place to avoid all detection, and would encompass the case of one who slips by an inspector unnoticed, e. g., Ex parte Callow, 240 F. 212 (D.Col.1916). This class of proscribed actions is set apart from those which involve the processing of papers. The present section 1251 recognizes the dichotomy by referring in subsection (a) (1) to all aliens excludable by law at the time of entry—which language would cover, among others, any alien who seeks to procure documents by fraud or misrepresentation or any alien who at entry does not possess the necessary valid documents, 8 U.S.C. §§ 1182 (a) (19)–20)—and in subsection (a) (2), to those who have entered without

---

3. Both United States ex rel. Volpe v. Smith, 62 F.2d 808 (7th Cir. 1933), aff'd on other grounds, 289 U.S. 422, 53 S.Ct. 665, 77 L.Ed. 1298 (1933), cited by the court, and Saadi v. Carr, 26 F.2d 458 (9th Cir.), cert. denied, 278 U.S. 616, 49 S.Ct. 21, 73 L.Ed. 540 (1928), involved proceedings for deportation before the statute made fraud or false representations specific grounds for deportation.

Ben Huie v. INS, 349 F.2d 1014 (9th Cir. 1965) merely declares the law "well settled", citing *Volpe* and *Saadi*. In view of the increased concern manifested by the Supreme Court toward the rights of aliens sought to be deported and the present existence of 8 U.S.C. § 1182(a) (19), I do not find these authorities as compelling as my brothers do.

inspection. Moreover, section 1251(a)(2), while more truncated than its predecessor, still carries the reference to entry "at any time or place other than as designated * * *."

I agree with the court that the legislative history evinces no purpose to broaden section 1255(a) to apply to aliens unlawfully in the country. However, when "lawfully" as a modifier of "alien who was * * * admitted to the United States as a bona fide immigrant" was dropped in 1958, Act of August 21, 1958, Pub.L.No. 85–700, 72 Stat. 699; and when, two years later, "bona fide immigrant" disappeared, Act of July 14, 1960, Pub.L.No. 86–648, 74 Stat. 505, it seems to me that Congress did something, whether it intended to or not. Moreover, to invoke statements of legislative intent under these circumstances seems to me to run counter to the mandate to follow the narrowest of possible meanings to favor the alien.

In addition to the above points, I am troubled by the difficulty of knowing where to stop if we go beyond the minimal definition of "inspection" as the submission of oneself to whatever interrogation and detention the inspector sees fit to require. In this case the court limits its holding only to a fraudulent claim of citizenship on the reasoning that such a claim effectively blocks further meaningful inquiry at the time of entry and that records enabling authorities to keep track of the alien are not required. Both reasons might argue for a stronger sanction to be imposed on one who fraudulently claims citizenship than on one whose fraud is directed at a different issue. But in fact Congress has not seen fit to make this distinction.

We are, I think, assuming a great deal to single out one kind of falsehood as vitiating inspection above all other kinds because of our assumption that it lulls inspectors more effectively than other kinds. And to the extent that we rest our conclusion on the frustration caused to the record-keeping procedures required of aliens, we are construing a statute because of the administrative procedures devised to implement that statute. The administrative tail is wagging the statutory dog. Both grounds, it seems to me, create an additional sanction of a kind more appropriately left to the Congress.

I would therefore say that petitioner is not barred from seeking discretionary relief under 8 U.S.C. § 1255.