**UNITED STATES of America,**
**Plaintiff,**

v.

**Gustavo OSUNA–PICOS, Defendant.**

**Crim. No. 8059.**

United States District Court,
S. D. California.

Sept. 16, 1970.

Harry D. Steward, U. S. Atty., and Brian E. Michaels, Asst. U. S. Atty., for plaintiff.

George Haverstick, Federal Defenders, Inc., for defendant.

## MEMORANDUM OPINION

TURRENTINE, District Judge.

On September 12, 1968, the defendant, Gustavo Osuna-Picos, age 20, a native and citizen of Mexico, entered the United States from Tijuana, Mexico, through the port of entry at San Ysidro, California. The defendant presented no documents to the immigration inspector but gained entry into the United States by pretending to be a United States citizen. The defendant was apprehended by officers of the United States Immigration Service. He was charged in deportation proceedings with being in the United States unlawfully by reason of having been an immigrant not in possession of a valid immigration document at the time of entry on September 12, 1968 (8 U.S.C. §§ 1251(a) (1) and 1182(a) (20)). At a deportation hearing on March 27, 1969, at which he waived counsel, he was found deportable as charged. On March 28, 1969, defendant was deported to Mexico through the port of Calexico, California.

On or about January 29, 1970, the defendant reentered the United States without documents permitting such entry. He was apprehended by immigration officers and indicted for violation of 8 U.S.C. § 1326, in that after having been arrested and deported on March 28, 1969, he had entered on or about January 29, 1970, without the Attorney General having expressly consented to such alien applying for admission.

The defendant's mother, Clotilde Picos Mackey, was admitted into the United States from Mexico as a lawful permanent resident on April 3, 1963, and has continued to reside in the United States in that status since that time.

Defendant, as a full and complete defense to the criminal charge, now claims that the deportation of March 28, 1969, was a nullity because at that time he was a child of an alien lawfully admitted for permanent residence and since his entry on September 12, 1968, was procured by fraud or misrepresentation, he is eligible for the benefits under 8 U.S.C. § 1251(f). The Government concedes that the defendant was under 21 years of age on September 12, 1968, and at that time was a child as defined under immigration laws (8 U.S.C. § 1101(b) (1) (A)).

8 U.S.C. § 1251(f) provides as follows:

"The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or oth-

er documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence."

■ Generally, the courts will not countenance a collateral attack upon a prior executed deportation order (United States ex rel. Koehler v. Corsi, 60 F.2d 123 (C.A. 2, 1932); United States ex rel. Bartsch v. Watkins, 175 F.2d 245 (C.A. 2, 1949)). However, if defendant was entitled to immunity from deportation under section 1251(f) on March 28, 1969, he was non-deportable and, consequently, his deportation on that date would have been unlawful and a gross miscarriage of justice (United States ex rel. Steffner v. Carmichael, 183 F.2d 19 (C.A. 5, 1950); cert. den. 340 U.S. 829, 71 S.Ct. 67, 95 L.Ed. 609; United States ex rel. Rubio v. Jordan, 190 F.2d 573 (C.A. 7, 1951); Palma v. Immigration and Naturalization Service, 318 F.2d 645 (C.A. 6, 1963)). If the deportation on March 28, 1969, was unlawful, no consent from the Attorney General was required prior to application for admission on or about January 29, 1970 (United States v. Bowles, 331 F.2d 742 (C.A. 3, 1964), rehear. den. 334 F.2d 325). Consequently, in the interest of justice it is necessary for the court to determine whether the defendant was exonerated by the provisions of section 1251(f), and if so, the prior deportation order is invalid.

It was stipulated by the parties that defendant entered the United States on March 27, 1969, upon a pretended (or false) claim to United States citizenship. It was agreed that he was an alien at time of such entry not in possession of any immigration documentation. He had not applied to an American consulate in Mexico for an immigrant visa, and, therefore, had not been exposed to the detailed inquiry and investigation of the American Consul abroad (Matter of Lee, Interim Decision 1960 (A.G.1969)); peti-

tion for review pending (Lee Fook Chuey v. INS (C.A. 9), No. 24376).

In Immigration & Naturalization Service v. Errico, and Scott v. Immigration & Naturalization Service, 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318, the landmark decision construing section 1251(f), each of the aliens had applied for an immigrant visa and had made false representations to the American Consul abroad. In other words, they had subjected themselves to the legislative design, implemented by regulations, for aliens to apply for and to establish eligibility for the status sought (See 8 U.S.C. §§ 1151–1154).

In the *Scott* and *Errico* cases, each of the aliens had committed fraud in the procurement of their immigrant visas. The Immigration Service contended that they were not eligible for section 1251 (f) relief because they were not "otherwise admissible", in that being inadmissible for fraud under 8 U.S.C. § 1182(a) (19), they were otherwise inadmissible under 8 U.S.C. § 1182(a) (20) for being an immigrant with an invalid visa. However, the Supreme Court held that the two charges for section 1251(f) purposes, were inseparable and that the documentary charge under section 1182(a) (20) was merged with the fraud charge under section 1182(a) (19). However, the important fact to note is that both aliens were processed for, and presented, immigrant visas.

In Matter of Lee, *supra,* decided by the Attorney General on May 1, 1969, Lee, a native and citizen of China, entered the United States falsely as a United States citizen. Subsequently, he acquired a United States citizen wife. The Attorney General, in overruling a grant of section 1251(f) relief by the Board of Immigration Appeals, stated in part:

"In order to obtain an immigrant visa pursuant to the standard requirements, applicable to all immigrants coming from abroad, a visa application is filed with the American consul; a medical examination is administered to assure that the health requirements

are satisfied; police certificates are obtained to show any criminal record; birth records are examined; and a valid passport is required. Furthermore, the applicant is registered and fingerprinted, and must provide satisfactory sworn responses to questions as to residence, organizational memberships, prior arrests or confinement, use of narcotics, previous deportation or immigration violations, ability to read and subversive activities.

In sharp contrast to the requirements to be met prior to the issuance of an immigrant visa, a person entering the United States as a citizen need only show his citizenship. Thus, an alien who enters this country by falsely claiming that he is a United States citizen manages to avoid furnishing the information that is required of an alien and that serves as the basis for determining whether he is admissible as an immigrant.

Despite this critical difference between entering the United States under a fraudulently obtained immigrant visa and entering pursuant to a false claim of citizenship, in the present case the Board interpreted *Errico* as authorizing relief from deportation for an alien who had satisfied none of the immigration requirements at the time of his entry. I find nothing in the language of section 241(f), its legislative history or the *Errico* opinion to support the view that Congress intended to permit the complete circumvention of the immigration visa system established by the Act. Such a circumvention would result from a holding that section 241(f) applies to an alien who neither was granted nor applied for an immigrant visa, but obtained his initial entry by posing as a citizen.

Section 241(f) must be interpreted in light of the process established by the Immigration and Nationality Act for obtaining information from aliens who seek to qualify for entry into the United States. In granting relief to certain aliens who have procured visas or other documentation, or entry into the United States by fraud or misrepresentation, section 241(f) only encompasses fraud or misrepresentation committed by an alien in the course of furnishing information or otherwise being processed as required by our immigration laws. An evaluation of information furnished by an alien is necessary for the immigration authorities to determine whether he is admissible as an immigrant. The 'otherwise admissible' requirement of section 241(f) would be meaningless if it were not interpreted to mean that the alien at the time of entry must have satisfied all of the other requirements necessary to entry as an immigrant, apart from his inadmissibility derived from the particular facts or status as to which he made his misrepresentation. An alien such as the present respondent, who never applied for and obtained an immigrant visa, cannot meet that test."

To interpret section 1251(f) to apply to any alien abroad having the requisite familial ties in this country and who could gain entry by falsely claiming United States citizenship, in effect would excuse such aliens from undergoing the minute scrutiny of the American Consul. The courts have consistently held that an alien who has gained entry into this country on a false claim to United States citizenship, has avoided inspection and "has effectively put himself in a quite different position from other admitted aliens, one more comparable to that of a person who slips over the boarder and who has, therefore, clearly not been inspected." (Goon Mee Heung v. Immigration and Naturalization Service, 380 F.2d 236 (C.A. 1, 1967), cert. den. 389 U.S. 975, 88 S.Ct. 479, 19 L.Ed. 2d 470; Ben Huie v. Immigration and Naturalization Service, 349 F.2d 1014 (C.A. 9, 1965).

Defendant's counsel cites Godoy v. Rosenberg, District Director, Immigration and Naturalization Service, 415 F.2d 1266 (C.A. 9, 1969), in support of his

claim that he is amenable to the relief provided in section 1251(f). Castillo-Godoy, a native and citizen of Mexico, was charged with being deportable because he was inadmissible at the time of entry under 8 U.S.C. §§ 1182(a) (9), 1182(a) (20), and § 1182(a) (14). Section 1182(a) (14) requires a labor certificate for special immigrants (as defined in 8 U.S.C. § 1101(a) (27) (A)), with an exception for a parent, spouse, or children of United States citizens, or aliens admitted for permanent residence. In the application for immigrant visa submitted by Castillo-Godoy to the American Consul in Mexico, he stated that he was married to a United States citizen. Relying upon that statement, the alien was issued an immigrant visa and was exempted from the labor certificate requirement. After being admitted into the United States for permanent residence, the Immigration Service discovered that Castillo-Godoy was not married to a United States citizen at the time for immigrant visa or entry into the United States.

Subsequent to entry, Castillo-Godoy became the parent of a United States citizen child. However, it was the view of the Immigration Service that Castillo-Godoy was not eligible for the benefits of section 1251(f) because he was not "otherwise admissible", being inadmissible under section 1182(a) (14).

Applying definitions enunciated by the Board of Immigration Appeals (Matter of Eng, 12 I&N Dec. 855), the Court of Appeals in Godoy v. Rosenberg, District Director, Immigration and Naturalization Service held that the ground of inadmissibility under section 1182(a) (14) was not qualitative but was quantitative or numerical and, therefore, within the meaning of section 1251(f), and did not result in the alien becoming otherwise inadmissible. The court said if the alien is a parent of a United States citizen, under the *Errico* and *Scott* doctrine, he would be eligible for section 1251(f) relief. (See also Becerra Monje v. United States Immigration and Naturalization Service, 418 F.2d 108 (C.A. 9, 1969).)

However, the instant case is distinguishable from Godoy v. Rosenberg, District Director Immigration and Naturalization Service. The latter alien was subjected to the processing and ajudicative procedures required of an applicant for an immigrant visa by the American Consul, and presented an immigrant visa to the Immigrant Inspector at the time of entry. The defendant, Osuna-Picos was not processed as an immigrant and had not immigrant visa or other documentation at the time of admission. Defendant applied for admission as a United States citizen, and was treated and admitted as such. The Immigration Service determines the right of *aliens* to enter and as soon as it is determined that a person is a United States citizen, further questioning as to right to enter ceases.

■ While Congress did desire that section 1251(f) be a remedy by which families could be kept together, it is hardly reasonable that Congress intended that section 1251(f) should encompass aliens who by fraudulent entry intentionally bypassed the careful examination and inquiry of the State Department merely because the alien had a lawful permanent resident or citizen spouse, child, or parent. Certainly, Congress did not want to discriminate against the alien who acted honestly and in good faith and who, in accordance with the statutes and regulations, applied and patiently awaited his turn at the office of the American Consul, but to reward the alien who would bypass the American Consul and fortuitously gain entry by fraud or wilful misrepresentation.

In keeping with the legislative policy to keep families united, Congress has provided visa preferences, and the "immediate relative" status—creating special categories to provide favorable treatment to aliens with the required family relationship—but Congress prescribed procedures, even though in general terms, for determining such status, allocating visa numbers, etc. (8 U.S.C. §§ 1151–4). Section 1251(f) cannot be interpreted separate and apart from the remainder of the Act. This section read together with other pertinent portions of the Act discloses a design by Congress to forgive

under section 1251(f) only those aliens who have applied for visas and who the visa-issuing authority had an opportunity to investigate.

It is concluded, therefore, that the defendant was properly held to be deportable pursuant to 8 U.S.C. §§ 1251 (a) (1) and 1182(a) (20), as charged. Nothwithstanding that he was then an alien child of a lawful permanent resident of this country, having circumvented the visa issuing process by a false claim to citizenship, he was not "otherwise admissible" at the time of entry on September 12, 1968, within the meaning of 8 U.S.C. § 1251(f). (Gambino v. Immigration and Naturalization Service, 419 F. 2d 1355 (C.A. 2, 1970); Matter of Lee, *supra*.)

The deportation proceedings held on March 27, 1969, were otherwise fair and lawful, the deportation order valid, and the expulsion on March 28, 1969, was pursuant to law.

Upon the stipulated facts, defendant, an alien, is guilty beyond a reasonable doubt of violating 8 U.S.C. § 1326 because he entered the United States from Mexico on January 29, 1970, after being arrested and deported on March 28, 1969, and without having procured the consent of the Attorney General to reapply for admission.