Interim Decision #1280

MATTER OF MATURANA

In DEPORTATION Proceedings

A-10582913

Decided by Board April 12, 1963

A person born in Puerto Rico on October 4, 1931, of a native-born Spanish citizen father and a Cuban citizen mother who came to Puerto Rico in 1913 and 1922, respectively, who, shortly after birth, was taken by her parents to Spain where she resided until her entry at San Juan, P.R., on May 17, 1957, was issued a national document of identity as a Spanish citizen in 1952 and was issued a Spanish passport, was a national or citizen of Spain at birth under the provisions of Article 17 of the Civil Code of Spain, as amended by the Act of December 9, 1931; therefore, she did not acquire United States citizenship under the provisions of section 5b of the Act of March 2, 1917, as amended by the Act of June 27, 1934, since she was a citizen or national of a foreign power (Spain) residing abroad permanently on June 27, 1934.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry under section 212(a)(20) [8 U.S.C. 1182(a)(20)]; immigrant, no visa.

The case comes forward on appeal from the order of the special inquiry officer dated November 6, 1962 finding the respondent to be an alien and ordering that she be deported to Spain on the charge contained in the order to show cause.

The facts of the case are not in dispute. The record relates to an unmarried female who was born in Manati, Puerto Rico on October 4, 1931. She last entered the United States at San Juan, Puerto Rico on May 17, 1957 in possession of United States Passport No. 471 issued at Madrid, Spain on May 8, 1957 and was admitted as a United States citizen. At the time of her entry she possessed no immigration document other than a Spanish passport which had been issued to her on May 14, 1957 at Madrid, Spain showing her nationality as "Spanish by origin." She testified at the original hearing on May 29, 1958 that she applied for a Spanish passport after she had received her United States passport because she was required to do so by the Spanish police before she could obtain permission to leave Spain (pp. 12 & 13). At

256

the time of her last entry she intended to reside permanently in the. United States.

The respondent and her parents left for Spain shortly after her birth and the respondent resided in that country until her entry at San Juan, Puerto Rico on May 17, 1957. During that period of approximately 26 years her father had died in Spain in September 1937 and the respondent and her family continued to reside in that country where the respondent obtained her schooling and employment.

The respondent testified that her father was a citizen of Spain and never had or acquired any other nationality and that her mother was a citizen of Cuba at the time of the respondent's birth and acquired no other nationality except possibly that of Spain by virtue of her marriage. The mother stated that the respondent's father, Luis Cueto Ibanez, first came to Puerto Rico about 1913 or 1914; that she arrived in Puerto Rico on January 1, 1922 ex SS. *Magallanes* accompanied by her husband and that they remained until 1931, subsequent to the birth of the respondent. The mother testified that between April 11, 1899 and April 12, 1900 she resided in Spain (Ex. 4).

The Service obtained a certified copy of the affidavit contained in the respondent's passport file executed by her at the American Embassy at Madrid, Spain on July 11, 1956 in the course of which she stated that she had obtained National Document of Identity No. 2809982 issued to her on January 14, 1952 by the Direction General of Security, Madrid, Spain to enable her to travel within Spain. The discovery that the respondent had been issued a national document of identity as a Spanish citizen on January 14, 1952 prompted the special inquiry officer to grant a Service motion to reopen on the basis of new evidence after an earlier decision of another special inquiry officer dated August 19, 1958 had terminated proceedings on the ground that the respondent acquired United States citizenship under the provisions of the Act of March 2, 1917 as amended by the Act of June 27, 1934 and that respondent's alienage had not been established. In granting the motion to reopen the special inquiry officer observed that the better procedure might have been to institute a new deportation proceeding by way of a new order to show cause and to submit all the prior evidence in the new proceeding. Inasmuch as the evidence adduced at the prior hearing and at the reopened hearing have been considered by the special inquiry officer in reaching his decision, and in the absence of any objection to the grant of the motion to reopen by counsel, it is believed that due process has been observed and that the failure to issue a new warrant does not vitiate the proceeding.[1]

[1] *Ex parte Guest*, 287 F. 884 (D.C. R.I., 1923) ; *Valerio v. Mulle*, 148 F. Supp. 1946 (1950) ; *Pineiro-Lopez v. Kennedy*, 298 F. 2d 540 (1901) ; *Matter of C—*, 4 I. & N. Dec. 415.

768-456—65——18

The special inquiry officer, in a long and thorough decision, has set forth the treaties and statutes relating to acquisition of United States citizenship by a person born in Puerto Rico and no purpose would be served by repeating them at length. We shall however set forth the provisions of section 5 and section 5b of the Act of March 2, 1917 as amended by June 27, 1934 and Article 17 of the Civil Code of Spain as amended by the Act of December 9, 1931. The former provides as follows:

Section 5. That all citizens of Puerto Rico as defined by section seven of the Act of April twelfth, nineteen hundred . . . and all natives of Puerto Rico, who were temporarily absent from that island on April eleventh, eighteen hundred and ninety-nine, and have since returned and are permanently residing in that island, *and are not citizens of any foreign country*, are hereby declared, and shall be deemed and held to be citizens of the United States . . . (8 U.S.C. 5). (Emphasis supplied.)

Section 5b (added by the Act of June 27, 1934). All persons born in Puerto Rico on or after April 11, 1899 (whether before or after the effective date of this Act) *and not citizens, subjects, or nationals of any foreign power*, are hereby declared to be citizens of the United States: Provided, That this Act shall not be construed . . . to extend such citizenship to persons . . . who are now residing permanently abroad and are citizens or subjects of a foreign country . . . (Emphasis supplied.) (48 U.S.C. 733b)

The Civil Code of Spain, as amended by the Act of December 9, 1931 provides as follows:

Article 17. The following persons are Spanish nationals: . . . (2) A person whose father or mother is a Spanish national, even if that person was born outside of Spain. (Laws Concerning Nationality, United Nations Legislative Series, ST/LEG/SER. B/4, 1954, Page 437).

It is clear at the outset that the respondent's father, who was a native-born Spanish citizen and who did not come to Puerto Rico until 1913 or 1914, did not acquire Puerto Rican nationality or United States citizenship; neither did respondent's mother. There is no question then of derivative citizenship through either parent. The respondent, who was born in Puerto Rico after April 11, 1899, to wit, on October 4, 1931, was at birth a Spanish national under Article 17 of the Civil Code of Spain and does not qualify either under section 5 or section 5b of the Act of March 2, 1917 since she was a citizen or national of a foreign power, namely, Spain.[2] It may be noted that birth in Puerto Rico prior to January 13, 1941 did not result in vesting of United States citizenship under the provisions of section 202 of the Nationality Act of 1940 or its successor statute, section 302 of the Immigration and Nationality Act, if the person so born was not actually or constructively a resident of Puerto Rico on January 13, 1941.[3]

[2] Cf. *Conrad* v. *Dulles*, 155 F. Supp. 542 (D.C. P.R., 1955).
[3] *Puig Jimenez* v. *Glover*, 255 F.2d 54 (1 Cir., 1953).

It is quite clear that the respondent and her family abandoned their residence in Puerto Rico in 1931 and resided in Spain thereafter, with the intention and the actual effect of taking up permanent abode there. The respondent was never prevented from returning to her residence in Puerto Rico and did not have any constructive residence in Puerto Rico. For that reason she does not fall within the scope of section 202 of the Nationality Act of 1940 or section 302 of the Immigration and Nationality Act.

The respondent's father did not reside in Puerto Rico on April 11, 1899 or at any time prior to 1913. Therefore, he did not acquire any claim to United States nationality under Article 9 of the Treaty of April 11, 1899 or to Puerto Rican nationality under the provisions of section 7 of the Act of 1900. The respondent's father could not have opted to retain Spanish nationality because that option could only be exercised by Spanish subjects, natives of the Spanish peninsula, residing in Puerto Rico on April 11, 1899, not by those, like the respondent's father, who became residents thereafter. Those born after the date of April 11, 1899, whose parents had opted their Spanish nationality, were clearly not United States nationals or citizens.[4]

Counsel has cited section 10 of the Political Code of Puerto Rico of 1902 and Article IX, section 5 of the Constitution of the Commonwealth of Puerto Rico to buttress his argument that the respondent at least acquired Puerto Rican nationality, if not United States citizenship. The United States citizenship or nationality of natives of Puerto Rico is effected only through the Treaty of April 11, 1899 between the United States and Spain and the applicable statutes, such as the Act of April 12, 1900, the Act of March 2, 1917, as amended by the Act of June 27, 1934, section 202 of the Nationality Act of 1940 and section 302 of the Immigration and Nationality Act. Hence, no Puerto Rican law or constitutional provision in derogation of or contradiction of any United States treaty or statute is effective.[5]

By virtue of the provisions of Article 17 of the Civil Code of Spain as amended by the Act of December 9, 1931, the issuance to her of a national document of identity as a Spanish citizen as early as January 14, 1952, which she admitted in her affidavit of 1956 executed before the United States Consul at Madrid, and the issuance to her of a Spanish passport, the respondent was a citizen of Spain at birth. Inasmuch as she was a citizen, subject or national of a foreign power, to wit, Spain, residing abroad permanently on June 27, 1934, she did not acquire United States citizenship on that date by virtue of the provisions of section 5b of the Act of March 2, 1917 as amended by the

---

[4] *Conrad v. Dulles*, 155 F. Supp. 542; *Matter of O— M—*, Int. Dec. No. 1124.

[5] *Puerto Rico v. Shell Co.*, 302 U.S. 253: *Downes v. Bidwell*, 182 U.S. 244 (1901).

Act of 1934. The respondent could have acquired United States nationality or citizenship by virtue of birth in Puerto Rico under no other provision of law. Hence, the respondent is an alien and is deportable as charged in the order to show cause. The attorney has specifically declined to request the privilege of voluntary departure. The order of deportation entered by the special inquiry officer is the only order possible under the circumstances.

**ORDER:** It is ordered that the appeal from the order of the special inquiry officer dated November 6, 1962 be and the same is hereby dismissed.